Laubie, j.
This is a proceeding in error to the court of common pleas, in a case to contest the will of Mary A Warner.
The sixth, fourteenth and seventeenth clauses or items of the will were erased with pen and ink ; that is, ink lines were drawn with a pen over each word of these three clauses, leaving the words, however, legible, so that they can be read the same as if no erasure had been attempted. In this form it was, as a whole, admitted to probate as the will of the testatrix, Mary A. Warner.
The proceeding now sought to be reversed was a proceeding in the court of common pleas to contest the will upon the part of the heirs-át-law of the testatrix, on fhe ground that ‘these three clauses were revoked by cancellation, and were no longer parts of the will.
It was admitted in the court below, upon trial to the jury, that these three clauses, subsequently to the execution of the will, had been erased by the testatrix herself with the intention of revoking these clauses only, and not with the intention of revoking the whole will.
The court, upon that agreed statement of facts by counsel, and the other testimony in the case, charged the jury, substantially, that such act of the testatrix, with such intent, did not constitute a valid revocation of these clauses of the will; and that the will should be read with these clauses in the will as parts thereof, provided the clauses were not in any part entirely obliterated, but all the words could be readily deciphered. To this charge of the court error is alleged, and the only proposition that is presented to us is, whether or not, under the statute of this state, a testator or testatrix may revoke a separate clause of a will by drawing ink lines across the face thereof.
So far as the right of making a will, and of revoking it, is concerned, it rests purely upon statutory enactment, and therefore the question presented is to be determined solely by the statute. Section 5953 of the Revised Statutes, or so much thereof as applies to this casé, provides: “ A will shall be revoked by the testator tearing, cancelling, obliterating, or destroying the same — with the intention of revoking it — by *112 the testator himself, or by some person in his presence, or by his direction; or by some other will or codicil, in writing, executed as prescribed by this title; ” and it is upon these words of this section that this matter is to be determined.
It is important that we regard the history of the statutory law of revocation, in order to arrive at a correct conclusion in construing the present statute. In that investigation, so far as the statutes of this state are concerned, I need go back no farther than the act of January 25, 1816 — 2 Chase, 929. Section 3 of that act provided: “ That any last will or devise so made, or any clause thereof, shall be revoked by the testator’s destroying, cancelling, or obliterating the same, or causing it to be done in his or her presence; or by subsequent will, codicil or instrument of writing made as aforesaid.” That act continued in force until it was revised and repealed by the act of February 26th, 1824. The fifth section of the latter act provided : “ That any last will and testament, or any clause thereof, shall be revoked by the testator destroying, cancelling or obliterating the same, or causing it to be done in his presence ; or by subsequent will, codicil, or instrument made as aforesaid;” — 2 Chase, 1305. So that in those acts the right was expressly given, not only to revoke a will, but “ any clause thereof” by cancellation or obliteration.
The act of February 26th, 1824, continued in force until the .act of March 23, 1840, superseded it — 1 Curwin 690. The •41st section of that act related to revocations and provided : “ A will shall be revoked by the testator tearing, cancelling, ■obliterating, or destroying the same — with the intention of revoking it — by the testator himself, or by some person in his .presence, or by his direction; or b.y some other will or codicil, in writing, executed as prescribed by this title.” I quote, of •course, only those parts' of these sections in point on this issue. This act remained in force until the adoption of the ^Revised Statutes, of which section 5953 is a re-enactment of .section 41 aforesaid, substantially word for word. Thus then it will appear, that from the early years of the state until 1840, the statutes expressly conferred the right to revoke any clause of a will, by cancellation or obliteration; and, like other : states of the Union, Ohio followed in this respect the English *113 Statute of Frauds and Perjuries of 1677. That act, 29 Car. II, C. 3, sec. 6, provided for the “ revocation of a devise * * * or any clause thereof” by cancellation, etc.; and continued to be the law of England, loosely interpreted to justify not only the' revocation of a clause by cancellation, but the changing of a devise, by cancelling the name of a devisee, and inserting that of another, until the act of 1. Victoria, which was passed in 1837 and took effect January 1, 1838. There was a slight difference between the English statute and our own, in that the English statute contained words of prohibition: “ No devise,“or any clause thereof, shall be revoked, etc.” While our statute is in the enabling form: 11A will shall be revoked, etc.” But this is of no consequence, because the right now depends solely upon the statutes themselves, whether granted expressly or impliedly.
By the act of 1 Vic., the English statute was materially changed and altered. It was so changed that no part of a will could be revoked by cancellation or obliteration, unless it was done in the presence of witnesses, signed and attested upon the margin, or by some other paper executed by the testator in the presence of witnesses. In other words, it precluded a testator from cancelling a special clause in his will without affixing his signature, and having the same attested. This English legislation has apparently caused, to some extent, a modification of judicial decisions upon this subject in this country, as well as a change of the statutes of some of the states, and the general drift of the law since then has been to inhibit such revocations. This legislation was placed upon the ground that allowing revocations of this character, opened the door to fraud, both upon the testator and upon the objects of his bounty, in that it required a contest to be decided upon parol evidence; first, whether the testator himself had cancelled or obliterated the words of the clause, and secondly, whether he did it with the intention to revoke that clause and no other part of his will. This was regarded as an evil so great that it was deemed essential to prohibit such cancellations. It is true," perhaps, that the same evil exists in regard to the whole will, as many of the statutes of the states and our own as well, allows the revocation of the *114 whole will by cancellation or by obliteration; and it might be well said that this still left the door open to the fraud referred to, because the same issues would have to be determined upon parol testimony as in the other case. But there was regarded to be a special evil in allowing testators to revoke special clauses in wills by cancellation, supplemented as it was by the latitudinarian interpretation put upon that right by the English courts and by the courts of some of the American states. And hence the changes that were made in the English law and the law of many of the states in the Union. Succinctly stated, this is the history of the statutory law upon this subject.
If then, the act of 1840 was designed to change the law, it was in perfect keeping with the general drift of legislative as well as judicial sentiment on the subject.
The evils to be remedied seem to be plain, but the claim is, that the same construction must be given to the present act as to the older acts; and if it will bear the same construction, then undoubtedly this claim is well founded.
We have a rule of construction in this regard in this state so well settled that it would be folly to undertake to upset it ; very unsatisfactory, it is true, and one which, in my opinion, it is difficult to defend. That rule is, that in construing statutes or parts thereof, which are revisions of former statutes, or of some act upon a particular subject, a strong presumption exists that the same construction is intended to be given to the revised act as to the old, notwithstanding a change in language. And unless it clearly appears that a change was designed and intended by the legislature, the same construction will be given to the revised act as was given to the old, or as the old would necessarily have received had it been construed, although there is a change of language. The late cases, 86 Ohio State, 326; 39 Ohio State, 336, and 43 Ohio State, 449, lay down this doctrine very broadly, and apply it to cases of great alteration in the language of statutes, without changing their construction.
In my view this rule of construction is hard to defend, for the reason, that if a legislature revises its statutes, or revises an act upon a particular subject, it certainly should be presumed to *115 do so with some intent of change. The rule, however, assumes the contrary, — assumes that there was no 'design to change. Where there is a change in the language, the presumption should be that the legislature designed something by that: that when the legislature repeals an act and at the same time passes another on the same subject, in different language, the presumption should be that they intended to make a change of some character in the law. But, as I have said, the rule established by the supreme court is the reverse. So that if this act, under these authorities, will bear the same-construction as the acts in force prior to 1840, it necessarily follows that a testator may revoke a special clause in his will by cancellation or obliteration, although the words remain legible. In support of this view, counsel for plaintiff in error submit to us the case of Bigelow et al. v. Gillott et al. 123 Mass. 102, (the only case they have been able to discover), which seems to sustain them fully upon this question.
It is true, as claimed, that the Ohio act of 1840, was taken bodily from the will’s act of Massachusetts, and our courts have declared that where the Ohio statute is a mere transcript of a Massachusetts statute, and the courts of that state, before the adoption of such statute by Ohio, had placed a construction on parts of that act, the legislature of this state not only adopted the statute, itself, but, unless there is some abundantly good reason to show otherwise, adopted also the construction which had been given it in Massachusetts. In this case no such rule can prevail, because the decision in question was made many years after the passage of the act of 1840 in this state. So that, while this act is substantially a transcript of the Massachusetts act, it had not received a construction in Massachusetts at the time it was adopted in Ohio. The Massachusetts act was passed in 1836, and the decision referred to was made it 1877. As an authority, of course, the decision of the Supreme Court of Massachusetts, deliberately made, is entitled to great weight, but only as an authority. That case certainly does decide the very point, on the same statute substantially, in favor of the plaintiffs in error. The Massachusetts act of 1836, omitted in the section relating to revocations, the words “or any clause *116 thereof,” (the same as our act of 1840 did) which existed in the statute prior to that time.
The syllabus of the case above referred to is as follows: “ An erasure by a testator of certain clauses in his will, with the intention of revoking them only, is a valid revocation of of such clauses, but not of the whole will; and the property thereby covered, in the absence of a contrary intention, passes under a general residuary clause of the will.”
The statute, under which that ease was decided, being in the same words as our own, if the case is good law, undoubtedly should govern us in the decision of this case. The only decision, perhaps, that may be found, that bears at all strongly against this, is Lovell v. Quitman, 88 N. Y. 377.
Section 42 of the New York act reads: “ No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed, or unless such will be burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by any person in his presence, by his direction and consent.” In the case referred to, the court of last resort in New York has held that under this act, thus seemingly authorizing the revocation of a clause or part of a will, by cancellation, a clause could not be revoked by cancellation. That the revocation of a part of a will could only be done by another will, or codicil, or instrument of writing, as prescribed in the act, and that the latter clause of the section, where it provides, “ or unless such will be burned, torn, can-celled, etc,” refers to the will as a whole, and did'not apply to a revocation of a part. This is a strong case, and is, perhaps, the strongest, if not the the only authority that can be found against the decision in the 123 Mass; and it will be seen that it is upon a statute more favorable to the right claimed than ours.
But passing that; did the legislature intend to change this law by leaving out the words, ‘‘or any clause thereof? ” We *117 bave seen that from the early years of the state up to 1840, the right was expressly given to revoke a part, or any clause of a will by cancellation or obliteration, as was attempted to be done here. And now, under re-enactments, the phrase ; “ or any clause thereof,” is left out. The rule which, in the construction of statutes, takes into consideration the evil to be remedied, is as well applied to the question of the meaning of a revised statute, as to any other. We have seen what the evil to be remedied was; and what the English parliament did; and that the general drift of the statutory enactments of the states, is to prohibit the revocation of a part of a will by cancellation or obliteration, of the character in question. In view of the supposed evil, and of the changes going on in the law in England, and in other states, we think it clear that the legislature did intend to make a change in the law ; that it .did intend to inhibit what theretofore had been permitted, the revocation of a part of a will by cancellation. We cannot concur with the Supreme Court of Massachusetts, in holding that leaving out those words was an unimportant verbal change.
But will this section bear, in fact, the same construction as the old, which authorized any will, or any clause thereof, to be revoked by cancellation ? The plaintiffs in error claim that it will, for two reasons: Fisrt, because the greater includes the less; and secondly, by the use of the word “ codicil ” in this section.
In the case of Bigelow et al. v. Gillott et al., ante, the court held that the power to revoke a will includes the power to revoke any part of it; and that if they were to hold that under such provision a testator could not revoke a part of his 'will by cancellation or obliteration, then they would be obliged by the same rule of construction to hold that he could not revoke a clause by codicil, which would be against the uniform practice in that commonwealth, as sanctioned by numerous decisions.
If these reasons are well founded, this case is at an end. But we think they are not; and for the reason that the section in question provides for the revocation of a part of a will in a manner other than by cancellation; and it is in the *118 power of the legislature to prohibit the revocation of a part of a will in one way and allow, it in another, and they have done that in this instance. This reasoning is also fallacious in regard to the use of the term “ codicil,” in the section, for by the very use of that word the legislature have declared the way, and the only way, in which a part only of a will may be revoked. It is the only word in the whole section that applies, according to its signification, to any object less than the will as a unit. We have arrived at the conclusion already, that by leaving out the wmrds found in the old acts, the legislature intended to make a change; intended to inhibit the revocation of a clause of a will by cancellation. If they did so intend, did they intend to prohibit revocation by codicil? At first blush, one might conclude that if the section prohibits the revocation of a part by cancellation, it prohibits it by codicil. “ A will shall be revoked by the testator tearing, cancelling, * * * or by some other will or codicil, in writing.” By a casual reading it would seem the term “or codicil” applies to the will as a unit as its subject-matter. But by the very use of the term “ codicil,” the legislature has expressed precisely a different meaning. The word “ codicil” has a definite legal signification. Its signification is, “ a supplement to a will.” The province of a codicil is not to revoke a will, but to change, add to, or subtract from, a will; so that, ex vi termini, the legislature have authorized a revocation in part, by the use of the term “ codicil.”
It is a misuse of words, to speak of revoking a will by codicil. The thing to which it is a supplement, must have an existence. It' ~ a part and parcel of a will. The only province of a codicil known to law is to change, add to, or subtract from, a will. Now, this accords, too, with the object to be accomplished in the change as made by the legislature. The evil to be remedied, we have seen, was not the act of revocation, but the manner in which it was done, allowing it to be done in the closet, secretly, by the testator, simply by drawing ink lines over the words. But a codicil is a thing to be in writing, and it is required to be executed with the same punctilio as the will itself. Here the legislature, then, secured the ob *119 jecfc to be aided, in allowing it tó be done by'codicil; bébau'se that must' be-in writing, and executed with the same formalities as a will.
E. Soivers and S. E. Williamson, for plaintiffs in error.
Webster & Angelí, for Brooks, Ex’r.
A. T. Brinsmade, for City of Cleveland.
Burrows & Jerome, for F. W. Warner, et. al.
But, again, the act prohibits, by cancellation, a "pro 'tanto revocation only — that and- nothing else. That was the object, in our view, in the change of the law; and that the section as it how stands inhibits. 'A codicil is a revocation, and something more; it is substantially the'making of a new will, because the authorities all hold, that by the execution of a codicil a testator republishes his original will. It is then not only a revocation, but a re-publicaf ión of the will as altered; or, in other words, the making of a 'new will; and it is expressly allowed to be done by the statute.
For these reasons we are compelled to dissent from the decision of the supreme court of Massachusetts.
We, therefore, hold that there was no error in the court below in the charge given to the jury, and the judgment will be •affirmed.
Judges Woodbury and Frazier concurred.