GEORGE T. BIGELOW & another, executors, *vs.* EDMUND GILLOTT & others.

Suffolk.    March 21. — July 3, 1877.    LORD & SOULE, JJ., absent.

An erasure by a testator of certain clauses in his will, with the intention of revoking them only, is a valid revocation of such clauses, but not of the whole will; and the property thereby covered, in the absence of a contrary intention, passes under a general residuary clause in the will.

APPEAL from a decree of the Probate Court for the county of Suffolk, allowing a certain instrument, with the exception of the " sixth " and " thirteenth " clauses thereof, as the last will and testament of Thomas Liversidge, deceased.    The will of the testator contained the following clauses :

" Sixth. I give to my executors the sum of six thousand pounds sterling, in trust, to be used and appropriated by them for the purpose of paying the debts which my father, Stephen Liversidge, owed in the year eighteen hundred and twenty-nine, said payment to be made to the legal representatives of the persons who were his creditors at the time: and it is my will and I hereby direct, that the principal only of said debts shall be paid, excluding interest; the sum of six thousand pounds being, in my opinion, sufficient for this purpose.    If any portion of said six thousand pounds shall remain after payment of said debts, such remainder is to belong to the residue of my estate, and to be disposed of accordingly by said trustees."

" Thirteenth. I give and bequeath to John Shufeldt, of Marshfield in the County of Plymouth, the use and improvement of the estate and farm belonging to me in said Marshfield, during the term of his natural life, on the condition that said Shufeldt shall pay all taxes and cost of insurance appertaining to said estate,

and shall continue to live thereon and occupy and cultivate the estate."

[The nineteenth clause gave his homestead estate to trustees to maintain a charitable institution.]

" Twentieth. I give, bequeath and devise all the rest, residue and remainder of my estate of every description, of which I shall die seised and possessed, to said Eleazer J. Bispham, Frederic A. Wellington and George Tyler Bigelow, absolutely and forever, in trust, nevertheless, to be appropriated, used and applied for the maintenance and support of the institution named and described in the last preceding clause of this will."

The appellants, the heirs at law of the testator, filed certain reasons of appeal, the following being the only one relied on in this court:

" That, it having clearly appeared by the evidence before the Probate Court that the obliterations in said paper writing were made subsequently to the execution thereof, as the last will and testament of the alleged testator, and that no reëxecution took place after said obliterations were made, the Probate Court, as it decreed the probate of the will, excepting the sixth and thirteenth clauses, should also have decreed that the portion of the estate originally disposed of under said sixth and thirteenth clauses, remained undisposed of by the testator at the time of his death, and passed to his heirs at law."

Hearing before *Colt,* J., who found that the will was duly executed on or about the time of its date, in the manner required by law, by Thomas Liversidge, as and for his last will and testament, and that he was at the time of executing the same of full age and of sound mind; that in the will, as presented for probate, ink lines appeared, drawn probably with a pen, through and across each and every word constituting the clauses of the will, numbered respectively " sixth " and " thirteenth," leaving the words, however, legible; that the lines were drawn across the words by Liversidge in his lifetime, after the execution of the will by him as aforesaid; and, on all the evidence bearing upon the intention of the testator in making these erasures, and upon the inspection of the original will, found, if competent so to find, that the erasures were made by the testator with the intention of revoking the sixth and thirteenth

clauses of his will, but with no intention of revoking or defeatiᴜg the other provisions of his will.

The question whether the evidence before him, (which was annexed to the report,) together with the original will, justified this finding, as well as the question, what effect those acts of the testator might have upon the will and the probate of it, were reserved for the consideration of the full court.

*L. S. Dabney*, for the executors.

*H. A. Johnson*, for the appellants.   1. By the Gen. Sts. *c*. 92, § 6, a will, excepting in special cases, must be executed in the presence of three or more witnesses.   A will, and it would reasonably seem, a part of a will, may be revoked by obliteration without witnesses.   The terms of the previous statutes, from which our present statute was taken, and the decisions under them, added to the fact that no reason anywhere appears, either in the commissioners' reports or the proceedings of the Legislature thereon, why any change was desirable, would seem to indicate the intention of the Legislature to have been merely to vary the language, but not the import of the statute in this respect.   St. 29 Car. II. *c*. 3, § 6.   St. 1783, *c*. 24, §§ 2, 6.   Rev. Sts. *c*. 62, § 9.   Gen. Sts. *c*. 92, § 11.   The term " will," in this chapter, does not seem to be held as strictly limited in its signification, and may include in its meaning part of a will.   Gen. Sts. *c*. 3, § 7, *cl*. 19.   *Bayley* v. *Bailey*, 5 Cush. 245.

2. The statute cannot mean, by " revoked," that the will or bequest may not only be called back by obliteration, but that the testator may also thereby, and without witnesses, pass the estate to a new legatee, to whom he expressly did not give it ɔefore, and to whom it cannot be said in any way to pass by the act of God or by the law. *Larkins* v. *Larkins*, 3 B. & P. 16. *Quinn* v. *Quinn*, 1 Thompson & Cook, 437, 442.   Cases where, in the language of Dewey, J., in *Thayer* v. *Wellington*, 9 Allen, 283, 295, " a general residuary bequest carries to the residuary legatee all void legacies, all lapsed legacies, all that is not disposed of to others, including in this last class what is not legally disposed of so as to pass to the person intended as the object of the testator's bounty," do not apply here.   In all these the tes·tator did his part of the work, *i. e.* executed his will in the pres·ence of the witnesses the statute required, and the act of God or

the law did the rest.   It cannot be said that the law contemplates that bequests revoked by obliteration subsequently to the execution of the will shall pass to the residuary legatee, and that thus, when the testator executes his will, here is a portion of the estate which may eventually pass to the residuary legatee, and, when the obliteration takes place, does pass, as in case of a lapsed legacy.   Such a view would too seriously conflict with the well grounded policy of the law requiring wills to be executed in the presence of witnesses; and, if such were the case, a testator, after executing his will, might obliterate all the bequests, excepting that to his residuary legatee, and thus give the bulk of his estate to the latter without witnesses, and under circumstances which the statutes as to execution of wills were expressly intended to guard against.   The only application of the statutes to the present case, which will fully uphold the policy of the law that the heir at law shall not be disinherited unless by a will duly executed, and at the same time will allow proper effect to the provision for revocation by obliteration, is, that the testator could revoke the sixth and thirteenth clauses of his will with the intention of revoking them, but that thereby the estate originally covered by these clauses became undisposed-of estate, and as such passed to his heirs at law.

MORTON, J.   The presiding justice who heard this case has found as facts, that the testator erased the sixth and thirteenth clauses of his will after its execution, and that such erasures were made with the intention of revoking the said clauses, but with no intention of revoking or defeating the other provisions of the will.   These findings were clearly justified by the evidence. We need not consider the evidence in detail, as the appellants do not contend that the findings were erroneous, the only questions raised by them being as to the legal effect of such erasures.

The statute provides that " no will shall be revoked, unless by burning, tearing, cancelling or obliterating the same, with the intention of revoking it, by the testator himself, or by some person in his presence and by his direction ; or by some other will, codicil or writing, signed, attested and subscribed, in the manner provided for making a will." Gen. Sts. *c.* 92, § 11.   This provision is a reënactment of the Rev. Sts. *c.* 62, § 9, with

merely unimportant verbal changes. The Rev. Sts. made ma-terial changes in the law as to wills, doing away with the dis-tinctions between wills affecting real, and wills affecting per-sonal, property, and putting all upon the same footing. The St. of 1783, c. 24, § 2, permitted the revocation of a devise of land, " or any clause thereof," in the manner pointed out in the stat-ute, which was the same manner now provided for the revocation of a will.

We see nothing to indicate that the Legislature, in the revision of 1836, intended to change the law in this respect and to limit the power of revocation to a revocation of the whole will. The power to revoke a will includes the power to revoke any part of it. If we were to hold that under this provision a testator could not revoke a part of a will by cancelling or obliterating it, we should be obliged by the same rule of construction to hold that he could not revoke a part by a codicil, which would be against the uniform practice in this Commonwealth, sanctioned by nu-merous decisions.

We are therefore of opinion that, in this case, the cancellation by the testator of the sixth and thirteenth clauses of his will, by drawing lines through them, with the intention of revoking them, was a legal revocation of those clauses.

The remaining question is as to the effect of this revocation upon the property affected by the revoked clauses. The appel-lants contend that the property devised and bequeathed therein is to be treated as intestate property, which goes to the heirs at law or distributees ; and the executors and trustees contend that t passes to them under the residuary clause of the will.

It is a clearly settled rule of law that, in a will of personal property, a general residuary bequest carries to the residuary legatee all the personal property of the testator which is not otherwise disposed of by the will, including all lapsed legacies and all void legacies. And in this Commonwealth, since the passage of the Rev. Sts. in 1836, the same rule applies to wills of real estate. *Thayer* v. *Wellington*, 9 Allen, 283, and cases cited. It is true that if a special bequest in a will lapses or fails for any reason, the sum bequeathed will not pass to the residuary legatee if it appears from the will that it was the intention of the testator to exclude it from the residuary clause

In *Thayer* v. *Wellington, ubi supra,* the court say: " We take the rule to be that a general residuary clause passes all the estate of the testator not otherwise disposed of, unless it is manifestly contradictory to the declared purpose of the testator, as found in other parts of the will. There must be a clear intention that in no event it shall pass to the residuary devisee."

In this case, there is nothing to indicate an intention on the part of the testator that the property covered by the revoked clauses should not go to the residuary devisees. The residuary clause is expressed in the broadest terms. " I give, bequeath and devise all the rest, residue and remainder of my estate of every description, of which I shall die seised and possessed." The intention of the testator is clear, to give all his property, not otherwise disposed of by the will, to the trustees named therein, for the support of the charity established by the nineteenth clause. He revoked the sixth and thirteenth clauses, and purposely and intelligently left the other provisions to stand as his will. The only fair inference is that he intended that the property covered by those clauses, and which by his revocation became undisposed of by the other clauses of the will, should fall within the residuary clause. We are of opinion that this case falls within the general rule, and that the property in question passes to the residuary devisees.

The argument of the appellants, that this view is in conflict with the provisions of law which require that a will disposing of property should be executed in the presence of three witnesses, is not sound. It is true that the act of revocation need not be done in the presence of witnesses; but such act does not dispose of the property. It is disposed of by the residuary clause, which is executed with all the formalities required in the execution of a testamentary disposition of property.

*Decree of Probate Court affirmed.*