# HOME OF THE AGED OF THE METHODIST EPISCOPAL CHURCH *vs.* SALLIE C. BANTZ, Admx. *c. t. a.*

*Presumptions When Part of Will is Found to be Cancelled—Revocation of Part of Will by Cancellation—Validity of Remaining Part.*

When certain parts of a will are found after the testator's death, to be cancelled by means of lines drawn through them, and the will after its execution was in the custody of the testator, the presumption is that the cancellation was made by the testator himself with the intention of revoking those parts.

A testator executed his will in 1892, when he possessed testamentary capacity. In November, 1898, he suffered a physical injury which gradually resulted in mental deterioration. He first showed symptoms of aphasia and finally of senile dementia, and was sent to an asylum in December, 1902, where he died in 1904. Until August, 1899, he transacted business in a normal manner. After his death it was found that certain parts of his will, which had been under his control for most of the time, had been cancelled, but there was no evidence as to when the cancellation was made. *Held,* that since the presumption of law is in favor of sanity and testamentary capacity, it must be presumed, in the absence of evidence to the contrary, that the testator possessed testamentary capacity when he made the cancellations appearing upon the will.

A testator has the right to revoke one or more clauses of his will by ob-
literating or cancelling the same, and the remaining part of the will is
not thereby invalidated unless the cancellation changes the effect of
such remaining part. ₀

A will duly executed provided for the payment to the testator's widow
of an annual income during her life, for which the income of all of the
estate was security, and at her death the estate was given to certain de-
visees and legatees. The testator cancelled, by means of lines drawn
through, that part of the will disposing of the estate after the widow's
death, and that part appointing a certain executor. *Held*, that the
cancellation of these clauses did not operate to revoke the entire in-
strument, and that the portion of the will not cancelled is entitled to
probate.

*Decided March 31st, 1908.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BOYD, C. J. BRISCOE, PEARCE,
SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*John Philip Hill* for the appellant.

In the absence of proof that the testator revoked the will
it must be probated as originally executed.

In the absence of evidence to the contrary it is presumed
that cancellations upon a will were made after execution.
1 *Redfield on Wills* 3 ed., secs. 315, 324; *Simmons* v. *Ruddell*,
1 Simons, N. S. 115, opinion of Lord Cranworth, V. C., page
136. *Doe d Shallcross* v. *Palmer*, 16 Q. B. 747, opinion of
Lord Campbell, C. J., at page 754. *Re White*, 6 Jur. N.
S. 808.

Where will has not been in "secure possession" of testator,
or where it is proved that others than testator had possession
of it, no presumption that cancellations were made by testa-
tor arises from the fact it was found among his papers. *Mat-
ter of Hopkins*, 172 New York 360; *McIntyre* v. *McIntyre*,
120 Georgia, 67; *Olmstead's Case*, 122 Cal. 230.

Burden of proof is on the party alleging revocation, who
must prove: *a*, that testator made cancellations; *b*, with in-
tent to revoke; *c*, when possessing testamentary capacity.

Art. 93, sec. 318, Public General Laws of Md.; *XXX American and Eng. Enc.* 635; *Harris* v. *Berrell*, 1 Swabey and Tristan, 153; *Bensen* v. *Bensen*, L. R., 2 P. & D. 172; *2 Wharton on Evidence*, 3 ed., sec. 894; *Semmes* v. *Semmes*, 7 H. & J. 388; *Rhodes* v. *Vinson*, 9 Gill, 169, note to this case in 52 Am. Dec. 685; *McIntyre* v. *Worthington*, 68 Md. 203; *Home for Aged* v. *Bantz*, 106 Md. 147.

Examining the evidence with reference to these propositions, it is submitted that there is, *First.* No evidence that will was cancelled before execution. *Second.* Proof that at least three persons and probably more beside the testator had possession of it after execution and before the death of the testator. *Third.* No proof that testator revoked any part of the will in accordance with Art. 93, sec. 318, of the Public General Laws.

As to the evidence on these points, JUDGE GAITHER found that "The will in this case has been shown to have been in the possession of another than the testator and not traced again in his possession, and it has not been shown by the respondent that the cancellations were made by the testator or by his direction."

Even if it were proved that testator cancelled the will, he was not possessed of the testamentary capacity to revoke any part of it. It is admitted in the pleadings that the testator was possessed of testamentary capacity at the time the will was made. The dissenting opinion of the Orphans' Court held that it not being shown that the testator either cancelled the will or caused it to be cancelled, the testimony relative to his capacity after its execution need not be considered. The opinion signed by JUDGES BLOCK and DUNN, however, holds that, "I am of the opinion that Theodore S. Bantz died intestate; that the erasures and cancellations made in the body of the paper-writing were made by the deceased with the intention of cancelling that portion of the instrument." The order refusing the third prayer of the petition and caveat was based upon the above opinion.

The evidence supports the allegations of the petition and

caveat that the will was not altered until after September 5th, 1901, and probably not until a short time before the testator was sent to the Sanitarium in December, 1902.

There is weighty evidence in the case tending to show that for many years before his death the testator was mentally incapable of revoking any part of his will.

*Wm. Pinkney Whyte*, for the appellee.

The whole scheme of the will was frustrated by the alterations and the Orphans' Cuurt correctly decided that Theodore S. Bantz died intestate, and the property should be distributed under the testamentary laws of the State, applicable to such case.

But even if the Court below erred in its decision, as to the cancellation of the whole will by the testator, yet its order was correct in refusing to grant the third prayer of the petition, towit: "3d. That the words contained in said paper or writing, as they appear without said lines and cancellations, may be declared to be the last will and testament of the said Theo-S. Bantz, and that said instrument of writing without any of said lines or cancellations may be admitted to probate by this Honorable Court."

Now, the allegation of the caveat on which that prayer is based, is as follows: *Third.* That said lines and cancellations, if they were made by the said Theodore S. Bantz, or at his direction, were not made when he was of sound and disposing mind, and capable of executing a valid deed or contract.

Now, the fact, that Bantz himself cancelled the items in the will as they appear is, hardly, open to disputation.

And the allegation is that he did so when of unsound mind. The burden of proof is on the part of the caveator to show when the cancellation was made and what the condition of his mind was at the time of such cancellation.

As a general rule the burden is on a person attacking a paper offered for probate, as a will, to sustain the grounds of his attack. The paper writing was found among the testator's papers, and was offered for probate for a will and appears

to have been cancelled or obliterated in material points, and thereupon at once there arises a presumption, that the cancellations or obliterations were made by the deceased and that he intended them to operate as a revocation of those items. *Olmstead's Estate*, 122 Cal. 224; *McIntyre* v. *McIntyre*, 12 Geo. 67–70; *Gardiner on Wills*, sec. 81, p. 258; 1 *Underhill*, sec. 230; *cases in 28 Am. St. R.*, 351; *Eschbach* v. *Collins*, 61 Md. 503.

Under circumstances, as shown by the testimony in this case, these presumptions arise, which must be overcome by the caveator, viz: 1. That the cancellation was the act of the testator.    2. That the cancellations were performed with the intent and purpose of revoking the clauses in the will.

There is no evidence whatever in the case that these revocations were effected during the period of his mental debility, while there is strong inferential testimony that they were made in 1898, long before he was sent to the Gundry Home.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings to our notice for the second time the will of Theodore S. Bantz, late of Baltimore City.

Mr. Bantz died in June, 1904, at an advanced age in Dr. Gundry's Sanitarium for feeble-minded persons to which he had been sent in December, 1902, as a sufferer from senile dementia.    At or shortly before his death his will, which had been executed in 1892, was found in his secretary at his home in Baltimore City.    When the will was found there appeared on its face lines drawn with a pen through and across certain words and sentences but not in such manner as to entirely obliterate them or render them illegible.

All of the persons named as executors in the will having predeceased the testator and he having left no children or descendants it was propounded in the condition in which it was found, for probate in the Orphans' Court of Baltimore City on June 15th, 1904, by his widow, the present appellee. The will was admitted to probate in common form and letters of administration, *c. t. a.*, upon the estate issued to the

appellee.   In September, 1906, the present appellant filed a
caveat to the will asserting in substance that, although the
testator was fully competent to make his will at the time of
its execution, he began about November, 1898, to show
symptoms of insanity which developed to such an extent that
it became necessary on November 23rd, 1902, to confine
him in an asylum, that the will was in the possession of Fred-
erick Leist, Esq., from its execution until his death early in
1902, and that for many years before his death the testator
was incapable of validly making, revoking or cancelling a
will and that if the lines on the will had been made by him
they had no effect as a revocation of the portions of the will
over which they were drawn.   The caveat further averred that
the lines were not upon the will at the time of its execution
and formed no part of it and prayed that the probate of the
will with the lines on it might be revoked and it might be
admitted to probate without the lines appearing on its face.

The appellee answered the caveat denying the jurisdiction
of the Court and setting up among other defenses that of *plene
adminstravit.*   The caveator having demurred to the answer
the Orphans' Court upon a hearing of the matter passed an
order dismissing the caveat upon the ground that they had no
jurisdiction to determine the question presented by it.   The
caveator appealed from that order to this Court and we reversed
the order and remanded the case in 106 Md. 147, holding
in our opinion that the issues raised by the caveat related to
the factum of the will and concerned its probate and not its
construction and were therefore cognizable by the Orphans'
Court, which under our testamentary system has exclusive
jurisdiction in granting or refusing the probate of wills.

When the case went back to the Orphans' Court the appel-
lee filed an answer denying the material allegations of the
caveat and much testimony was taken by the respective par-
ties and the matter was again heard by that tribunal with the
result that a majority of the Court filed an opinion and order
holding that Theodore S. Bantz died intestate and saying
"That the erasures and cancellations made in the body of

the paper writing were made by the deceased with the intention of cancelling that portion of the instrument; it follows therefore that the remaining portions of said instrument must fail as a will because standing alone they would be unintelligible to the intention of the entire instrument." The order also revoked the probate of June 15th, 1904, and the letters of administration then granted. From that order the present appeal was taken.

To facilitate the consideration of the issues presented by the appeal we here insert a copy of the will, without its formal opening and conclusion, in which the cancelled portions appear in italics. It is as follows: "I, Theodore S. Bantz, of the city of Baltimore, in the State of Maryland, do make this my last will and testament, in manner following, that is to say: After the payment of all my just debts and funeral expenses, I give, devise and bequeath all my estate and property, real and personal wheresoever the same may be unto Joshua T. Young, *my brother Edward Bantz,* M. D. and Frederic Leist and the survivors or survivor of them in trust and confidence to hold the same for the term of my wife's, Sallie C. Bantz, life, and after paying the taxes and necessary expenses thereon, to pay her out of the net income of my estate the sum of one thousand and ninety-five dollars per year during her natural life in quarterly installments of two hundred and seventy-three dollars and seventy-five cents each; and the remainder of the income to be invested by them and held for the purpose of making good any deficiency of the income to my wife Sallie C. Bantz so that she will receive one thousand and ninety-five dollars for every year during her natural life and at the death of my wife Sallie C. Bantz said trust shall cease *and the property No. 724 West Lexington Street and No. 202 Myrtle Avenue shall go to my brother Edward Bantz absolutely. Five Thousand Dollars shall go to Charles G. Bowman, nephew of my first wife Cecelia Bantz and four thousand dollars shall go to in equal shares to Thomas Bowman Smith and Cecelia Bantz Smith children of George P. Smith and his wife Mary C. Smith and the rest and residue and remainder of*

*my estate shall go to the Home for the Aged of the Methodist
Episcopal Church located at the southwestern corner of Fulton*
Avenue and Franklin street for the purpose of a dormitory to
be known as a Cecelia Bantz *dormitory*.    I do further give
to the trustees named in this my last will and testament and
to the successors in said trust and to the survivors or sur-
vivor of them all powers which may be necessary for the pre-
servation, direction, repair, management or profitable use of
any property; real or personal devised by me and bequeathed
by me and remaining under their or his control, until such time as
their respective duties and the duties of each one of them in rela-
tion to the said trusts and property shall be fully performed.    I
constitute and appoint Joshua T. Young, *Edward Bantz* and
Frederic Leist to be the executors of this my last will and
testament (my brother Edward Bantz not to receive *commis-
sion* as trustee and executor as the provision made for him is
to be in lieu thereof) hereby revoking all other wills and codi-
cils by me heretofore made."

We have not put in italics, in the foregoing copy of the
will, the words "Avenue and Franklin street for the purpose
of a dormitory to be known as Cecelia Bantz dormitory,"
which conclude the gift of the residue of the estate to the ap-
pellant, because the lines on the will did not pass through
them.    But an inspection of the original will, which was ex-
hibited to us upon the former appeal, showed diagonal lines
drawn across the clause containing those words in such man-
ner as to fairly indicate a purpose to include them also in the
cancellation.

A careful consideration of the testimony appearing in the
record leads us to agree with the Orphans' Court in its first
conclusion that the cancellations on the face of the will were
made by the testator with the intention of revoking the can-
celled portions of it.    We are, however, unable to agree with
that tribunal in its second conclusion that the other portions
of the will were so interwoven, with the cancelled portions,
that they cannot stand alone and the entire instrument must
therefore fail as a will.    The Orphans' Court expressed no

opinion upon the issue, much discussed before us, of the testamentary capacity of the testator when he made the cancellations, but in our opinion the testimony fails to overcome the well settled and salutary presumption in favor of sanity and testamentary capacity to which every person is entitled under the law.

Without reviewing at length the testimony appearing in the record, we observe that there is no direct evidence of the time when or the person by whom the cancelling lines were put upon the will. It is shown by the evidence that the will was executed at the office of the testator's counsel, Frederick Leist, Esq., in 1892, and was found among Mr. Leist's papers early in 1902 after his death, but it does not follow that the will was out of the testator's possession during all of that time. In view of the fact, that Mr. Leist was his professional adviser whose office he is shown by the evidence to have visited every three or four months for four or five years prior to Leist's death, the will should rather be regarded as having been under the testator's control and practically in his possession during that time. It appears from Mr. A. DeR. Sappiugton's testimony that he found the will among Mr. Leist's papers when assorting them shortly after his death and sent it to Mr. Bantz, so that it is shown by the evidence to have been in the possession or under the control of the testator practically the entire time from its execution down until he went to the sanitarium, somtime after which it was found with the cancellations upon it by his widow and nephew locked up in his private secretary. The only times when it was shown to have been beyond his control are the short periods between Mr. Leist's death and the examination of his papers by Mr. Sappington and the brief possession of the messenger who carried it from him to the testator. The evidence does show that after the testator went to the sanitarium from which he never returned his keys were handed to his wife by Dr. Gundry and the will may therefore in a certain sense be said to have been in her custody from that time until his death, but she distinctly testifies that she never saw the will until it was found by her

and the testator's nephew in his secretary after husband went to the sanitarium, and both she and the nephew testify that the cancellations were upon it when it was found by them. Admitting the existence of the legal presumption contended for by the appellant that, in the absence of any proof of the time of drawing the lines upon the will, they must be regarded as having been put there after its execution, we think that the proof of possession of the will by the testator is sufficient to invoke the other and equally well established presumption arising from such possession that the cancellations were made by the testator himself. This presumption is strengthened in the present case by the total absence of any evidence tending to show that the cancellations were made by any other person, or even to cast suspicion, in that connection, upon anybody.

In the case of *In re Hopkins Will*, 172 N. Y. 360, a will duly executed by Hopkins on the 14th of November, 1891, was found with its signature cancelled in his desk after his death . which occurred on May 9th, 1901. The Court there after finding that the will had undoubtedly been executed by the testator on the day of its date and that the only question of fact before them was whether his signature was cancelled by him and with the intention of revoking the will proceed to say, "The finding of the will in the testator's desk with his signature cancelled raised the presumption that the cancellation wsa done by him with the intention cf revoking it." *Williams on Executors*, vol. 1, p. 85, says: "If a testament was in the custody of a testator and upon his death it is found among his repositories, cancelled or defaced, the testator himself is presumed to have done the act and the law presumes that he did it *animo revocandi.*" In *Redfield on Wills*, 307, it is said: "The rule of evidence in the ecclesiastical Courts in regard to presumptive revocations from the absence or mutilation of the will seems to be that if the will is traced into the testator's possession or custody and is there found mutilated in any of the modes pointed out in the statute for revocation or is not found at all, it will be presumed the testator destroyed or mu-

tilated it *animo revocandi;* but if it was last in the custody of another it is incumbent upon the party asserting the revocation to show the will again in the testator's custody or that it was destroyed or mutilated by his direction." See to the same effect I *Jarman on Wills,* p. 119; *Schouler on Wills,* sec. 401; *Graham* v. *Burch,* 28 Am. St. Rep., note to p. 351.

In the absence of any direct evidence as to the time at which the cancellations in the will were made the determination of the mental condition of testator when he made them is attended with some difficulty. It is conceded that when he made the will in 1892 he was perfectly competent to do so, and the evidence may be said to establish the fact that after he went to Dr. Gundry's sanitarium in December, 1902, he was not capable of making or revoking a will. There is also a concurrence of testimony to the effect that after he suffered a violent personal injury in November, 1898, he began to give evidence of an impairment of his mental vigor. He first exhibited aphasia and then occasional eccentricities of conduct and from about six months before he was sent to Dr. Gundry's he was the subject of delusions, imagining that persons were seeking to injure and cheat or rob him, or to burn his house down. He also at times threatened to do bodily injury to those about him although he never seems to have made an actual attempt to do so. The testimony consisting of opinions of the lay witnesses upon the subject of his mental capacity was conflicting and not very convincing in either direction. Dr. Crozier who had known him for many years and who attended him professionally at irregular intervals but rather frequently between the 22d of November, 1898, and his going to Dr. Gundry's in December, 1902, said that he was suffering from senile dementia, of which the primary symptom was the aphasia dating from sometime after receiving the injury in November, 1898, and which became more pronounced as time elapsed and resulted in the dementia. Dr. Crozier did not think that Mr. Bantz was capable of transacting business or making a valid deed or contract after November 22d, 1898, but as over against that opinion a

number of business transactions were proven to have been
made by him after that date such as purchases of stock, loans
of money, drawing checks, collecting and receipting for divi-
dends, attending the monthly meetings of the board of di-
reetors of the Reisterstown turnpike, of which he was a mem-
ber, and participating in its deliberations.   As late as August
3rd, 1899, he at his own instance made a loan of $2,000 to
the turnpike company and took its note for it.   He seems to
have made these various transactions unattended and without
assistance and in a normal manner, and nothing in his con-
duct on those occasions suggested to the persons with whom
he dealt, any impairment of mental capacity on his part.

· It is to be observed that the cancelled clause of the will,
under which the appellant claims, gave the remainder after
the widow's death in two houses to Dr. Edward Bantz, the
testator's brother, and that Dr. Bantz's name in the will as an
executor was also cancelled.   Now the record shows that Dr.
Bantz died on February 5th, 1897, almost two years before
the testator suffered the personal injury from which Dr. Crozier
dated the appearance of the first symptoms of the testator's senile
dementia.   These circumstances suggest that the cancellations
in the will may have been made at or near the date of Dr.
Bantz's death before the appearance of the symptons of insan-
ity.   In view of the propositions frequently announced by this
Court that the presumption of the law is in favor of sanity
and testamentary capacity and that the right of testamentary
disposition of property, which of course includes the right of
revoking such disposition, ought not to be imperilled by in-
conclusive or uncertain testimony, we feel constrained to hold
that the testator in the present case must be presumed to
have been possessed of testamentary capacity when he made
the cancellations appearing upon his will.

There was no such intimate or interdependent relation be-
tween the cancelled clauses and the other portions of the will
as to cause the cancellation of those clauses to operate as a
revocation of the entire instrument.   The scheme of the will
was a simple one having two distinct objects in view.   It *first*

provided for the payment to the widow of a fixed annual income during her life to secure which the entire net income of the estate was pledged, and *secondly* it disposed absolutely of the corpus of the estate after her death to certain specified devisees and legatees.   The cancelled portions of the will are only those making disposition of the remainder of the estate after the widow's death and those appointing the testator's brother, Dr. Bantz, an executor and trustee.   The provisions in favor of the widow were untouched by the cancelling pen.

In *Eschbach* v. *Collins*, 61 Md. 478, we distinctly recognized the right of a testator to revoke one or more clauses of his will without invalidating the rest of it, if such revocation does not operate to enlarge the estate of any one who takes under the same will, or to change the character of the remaining provisions of the instrument.   In that case we also held that the revocation could be made by cancellation or obliteration by the testator, without any attestation and that "It is not necessary that the words erased should be wholly illegible, but the act of the testator must be such as to clearly indicate an intention to expunge the whole clause, so that it shall no longer constitute a sub-division of the will."

It is unnecessary for us to determine the effect of the cancelling of the name of Dr. Bantz as an executor and trustee and permitting the remainder of the clause in which the name occurred to stand unrevoked, because he predeceased the testator and no question ever arose as to his right to act in those two capacities under the will.

The result of what we have said is that the cancelled clause of the will which disposes of the estate in remainder after the death of his widow must be regarded as having been revoked by the testator, but that the other portion of the will was unaffected by such revocation and is entitled to be admitted to probate as his last will and testament.   This conclusion will result in an intestacy as to the estate in remainder following the trust estate created for the benefit of the widow for her life, but the testator was at liberty to so dispose of his estate if he saw fit.

The order appealed from must be reversed and the case remanded for further proceedings in accordance with this opinion.

> *Order reversed and cause remanded for further proceedings, the costs here and in the Orphans' Court to be paid out of the estate.*

WORTHINGTON, J., dissented.