ISABEL N. MILES ET AL. APPEAL FROM PROBATE.

Third Judicial District, New Haven, June Term, 1896. ANDREWS, C. J., TORRANCE, FENN, HAMERSLEY and PRENTICE, Js.

Under § 542 of the General Statutes it is essential to the legal revocation, in whole or in part, of a duly executed will, that the act of cancellation should have been done "by the testator or by some person in his presence by his direction." If the trial court finds that this fact was not established, it is of no avail to the losing party that certain evidential facts are found which tend to prove a compliance with the statutory requirement. Such facts should be duly weighed and may be sufficient to call for counter evidence from the other side, but they cannot be said to conclusively and irrefutably establish as matter of law the ultimate fact they tend to prove.

While a will may be revoked in part, by cancellation in accordance with the statute, yet if the cancellation works an alteration of other portions of the instrument, either by way of addition or substitution, the attempted

revocation is invalid; since if held valid it would permit a new and different testamentary disposition to be made in violation of the statute relating to the execution of wills.

[Argued June 3d—decided June 25th, 1896.]

APPEAL from an order and decree of the Court of Probate for the District of Milford, refusing to admit to probate a certain clause in the will of Diana M. Miles, taken to the Superior Court in New Haven County and tried to the court, *Hall, J.;* facts found and judgment rendered in favor of the appellants, and appeal by the original appellees for alleged errors in the rulings of the court.    *No error.*

The case is sufficiently stated in the opinion.

*William B. Stoddard* and *James H. Webb*, for the appellants (original appellees).

Upon the facts proved the *legal presumption* was that the cancellation was made by the testatrix *animo revocandi*, and the burden of proving the contrary was upon the appellants. The burden of proof is on those seeking to establish a will containing marks of obliteration or cancellation, to prove that such marks were made *animo revocandi*.  1 Williams on Executors (6th Am. Ed.), 185, 195; *Rickards* v. *Mumford*, 2 Phillim. 23 ; *Brown* v. *Brown*, 8 Ellis. & Bl. 876 ; Abbott's Trial Evidence, § 73.   The American cases hold that when a will is traced into the hands of the testator, and found altered or mutilated, or not found at all, it is presumed to have been altered, mutilated, or destroyed by the testator himself, *animo revocandi*, and the burden of proof is upon those seeking to establish the entire will, to repel this presumption.   No other rules of presumption are suggested by the authorities.    *Betts* v. *Jackson*, 6 Wend. 173, 187 ; *Iddey* v. *Bowen*, 11 id. 227 ; *Minkler* v. *Minkler*, 14 Vt. 125 ; *Bulkeley* v. *Redmond*, 2 Bradf. (N. Y.) 281, 284 ; *Davis* v. *Sigourney*, 8 Metc. 487 ; *Johnson's Will*, 40 Conn. 587 ; 1 Jarman on Wills (5th Am. Ed.), 133, 283, note 7.   In this case, the legal presumption is strongly corroborated by the declaration of the testatrix herself, when handing the will to her brother David.    *Rus-*

*sell* v. *Frisbie*, 19 Conn. 205; *Douglass* v. *Chapin*, 26 id. 76, 92. So also the declaration to her brother Henry strengthens the legal presumption that she in fact made the erasure, and made it *animo revocandi*. *Lawyer* v. *Smith*, 8 Mich. 411–421; *Herring* v. *Allen*, 25 id. 505; *Collagan* v. *Burns*, 57 Me. 449; *Patterson* v. *Hickey*, 32 Ga. 156–163; *Dennison's Appeal*, 29 Conn. 402; *Armstrong* v. *Morrill*, 14 Wall. 120, 138, 139; *Insurance Co.* v. *Moseley*, 8 id. 397, 407. The cancellation by a testator of a portion of his will, is a valid revocation of the bequest so canceled. *Bigelow* v. *Gillott*, 123 Mass. 102. Under the statute of Victoria, canceling, or obliterating no longer constitutes a valid revocation. The will or codicil, or part thereof, must be burned, torn, or otherwise destroyed. Prior, however, to the Act of Victoria, the unbroken line of English authorities was to the effect that the cancellation of a part of the legacy revokes the legacy so canceled, without affecting the residue of the will. *Mence* v. *Mence*, 18 Vesey, 350; *Larkins* v. *Larkins*, 3 B. & P. 16; *In the Goods of John Woodward*, 2 Prob. & D. Rep. 206; *Moore* v. *Moore*, 1 Phillim. 375; *Sutton* v. *Sutton*, Cowper, 812; *Gastrell* v. *Smith*, 4 East, 419; *Francis* v. *Grover*, 5 Hare, 39; *Swinton* v. *Bailey*, 4 L. R. App. Cases, 70; 1 Jar. on Wills (5th Am. Ed.), 292. See also *Matter of Kirkpatrick*, 22 N. J. Eq. 463; *Tomlinson's Estate*, 133 Pa. St. 245; Williams on Exrs. (6th Am. Ed.) 180. The cancellation in this case is a revocation *pro tanto*, and leaves the residue of the instrument a valid will. 2 Greenl. on Ev. § 68; *Sutton* v. *Sutton*, Cowp. 812; 1 Jar. on Wills (5th Am. Ed.), 291.

*Talcott H. Russell*, for the appellees (original appellants).

The due execution of the will having been proved, the burden of proof is upon the party claiming a revocation. *Harris* v. *Berrall*, 1 Swaby & Tristam, 155; *Eschbach* v. *Collins*, 48 Amer. Rep. 123. Where a will, when presented for probate, shows interlineations or other alterations on its face, they are presumed to have been made after execution. The result is that the will stands, and the changes are disregarded. 1 Wil. on Exrs. (6th Ed.) 168–173; Bigelow's

Jar. on Wills (6th Ed.), *118; *Simons* v. *Rudal*, 1 Simons, N. S. 138; Chaplain on Wills, 440; Barnum on Wills, 143; Schouler on Wills, §§ 401, 435; *Doane* v. *Hadlock*, 42 Me. 72; *Griswold* v. *Penniman*, 18 Amer. Rep. 374. Considerations of public policy require a strict construction of the statute concerning revocations. That statute does not in terms allow partial revocation. To allow such partial revocation in a case like this, results not merely in the revocation of the clause in question, but in new and increased bequests to others mentioned in the will. It is impossible that our statute should ever have contemplated such results. And that such is not its proper construction, is proved by the decisions of other States in regard to statutes in similar language. *Griffin* v. *Brooks*, 48 Ohio St. 211; *Law* v. *Law*, 83 Ala. 432; *Stover* v. *Kendall*, 1 Coldw. (Tenn.) 559. The policy of the law is against such alterations or partial revocations. It destroys the safeguards which the law throws round testamentary documents, and this policy is reflected in the recent statutes and decisions. See Schouler on Wills, Ed. of 1887, §§ 397, 431–434; Theobald on Wills, 30; 1 Jar. on Wills, 147, *113 and note, 117.

FENN, J. Diana M. Miles, late of Milford in this State, died in 1891, being then about eighty-six years of age. She left a will dated and executed February 13th, 1879. This will, in addition to the formal parts and the clause appointing an executor, contained two sections only, which are as follows:—

" *First.* After all my lawful debts are paid and discharged I give, devise, and bequeath to my nieces, Susan Whittlesey and Isabel Newton, daughters of my brother Charles, to each of them ten shares of the capital stock of The New York, New Haven & Hartford Railroad Company, being in all twenty shares of said capital stock, of the par value of one hundred dollars each, to them, their heirs and assigns forever.

" *Second.* I give, devise, and bequeath all the residue and remainder of my property and estate, both real and personal, of whatever kind and nature, to my brothers, Charles, David,

and Henry Carrington Miles, share and share alike, to them, their heirs and assigns forever."

When this will was presented in the Court of Probate lines appeared drawn through all that part of the above recited first section, after the words, "*First.* After all my lawful debts are paid and discharged I "; that is to say, commencing with the word "give," and ending with the word "forever." The words over which said lines were drawn were in no other manner canceled or obliterated, but remained perfectly legible.

The case came to the Superior Court on an appeal from an order and decree of the Court of Probate for the district of Milford, denying the application of the then appellants, that the words and clauses above referred to, through which lines were drawn, be admitted to probate, and in disapproving and disallowing said words and clauses, and in proving, approving, allowing and admitting to probate said will without said words and clauses. The Superior Court rendered judgment reversing the decree of the Court of Probate. From this judgment the original appellees appealed to this court. They thus in turn became appellants, and will be so regarded and styled in this opinion. The original appellants will be called the appellees.

Upon the trial in the Superior Court no exceptions to rulings upon evidence, or to anything which occurred during the presentation of the case, were taken. The court made a finding of the facts upon which its judgment was based, and the sole questions of law relate to the sufficiency of said finding to support and vindicate such judgment. The claims made by the appellants are stated in the finding, and were : that the facts found were sufficient in law to establish the fact that either the testatrix herself made said erasures, or caused the same to be made in her presence, and that upon said facts found, the erasures in question constituted a valid revocation of said bequest in said will; that the legal presumption was that said erasures were made by the testatrix, and that the burden of proof was upon the appellants to show that said erasures were not made by her, or by some person

in her presence by her direction. The appellees claimed otherwise, and further, that a portion of a will could not in this manner be revoked under the statute of this State.

The statute referred to, in force at the time the will in question was made, is now part of General Statutes, § 542. It provides: "No will or codicil shall be revoked in any other manner except by burning, canceling, tearing, or obliterating it by the testator or by some person in his presence by his direction or by a later will or codicil." There must of course in any given case be a will, otherwise valid and operative, before the question as to how it may be revoked will arise. There was one here, but lines had been drawn through a certain portion of it after execution, and before exhibition in the Court of Probate. The sole inquiry was, did this fact operate as a revocation, not indeed of the entire will, but of that portion of it. It could not so operate unless the requirements of the statute had been complied with. Waiving for the time the question whether such cancellation, however affected, would constitute such partial revocation, it remains that in order to do it the act must be done by the testator, or by some person in his presence by his direction. Unless this be found, no finding that would justify a revocation exists. The court has made no such finding in this case. On the contrary the judge said: "I do not find that said erasures were made by the testatrix or in her presence."

But the appellants urge that the court did find certain evidential facts, and that upon these facts the legal presumption was that the cancellation was made by the testatrix *animo revocandi*, and that the burden of proving the contrary was upon the appellees. A word in explanation of this claim, as the appellants make it, may be called for. They do not assert that in every case, and at the outset, a burden rests upon the proponents of a will to prove not only the affirmative, that it was once valid, but also the negative, that it has not been afterwards revoked, either wholly or in part; to prove the case and anticipate and disprove the defense. This being so, they do not mean that a burden of proof is upon the appellants "in the first instance"—*Knox's Appeal*,

26 Conn., 20, 22—but only a burden " shifted," if such ex-
pression is ever proper, and it is sometimes used. *Barber's
Appeal*, 63 Conn., 393, 403. The main facts upon which the
appellants rely in support of this claim of a legal presumption
in their favor, are these :—

· " The will in question was drawn by Charles Miles, the
executor, in 1879, at the time it bears date, and remained in
his possession unchanged until the fall of 1885, when David
Miles, a brother of the testatrix, and one of the residuary
legatees, sent for the will, and in pursuance of his request
Charles Miles sent said will to said David. Shortly after the
will was so sent by Charles Miles to David Miles, the testa-
trix handed to David Miles an envelope upon the outside of
which was written, ' Diana Miles' will,' and said to him,
' There is my will.' As she handed the will to David he said
to her, ' Are you satisfied with it now ? ' and she replied,
' Yes.' It did not further appear in evidence how or when or
for what purpose, the testatrix had received said will from
David Miles after he had received it from Charles Miles, as
aforesaid. From that time the will remained in the posses-
sion of said David Miles, until his death in December, 1885.
A few days after the death of David Miles, at the request
of the testatrix, the will was delivered to Henry C. Miles, a
brother of the testatrix, who from that time kept it in his pos-
session until it was filed in the Court of Probate by said
Henry C. Miles, in February, 1892. The erasures in ques-
tion were made prior to delivery of the will to Henry C.
Miles, after the death of David, aforesaid." They were not
made prior to the time the will was sent by Charles Miles to
David Miles, in 1885. " In the fall of 1881 said Henry C.
Miles, who had procured a copy of said will, said to the tes-
tatrix, ' By your will you have given my brother Charles'
family twenty-four shares of the New York and New Haven
Railroad stock, and you have given brother David and myself
eight.' The testatrix replied, ' I won't have it so : I will
scratch it out.' " The court reciting these facts added :
" From the appearance of said erasures and from all the facts
aforesaid, I believe that said erasures, though made at the

request of the testatrix, and for the purpose of revoking the provision of the will over which said lines were drawn, were not made by the testatrix herself."

We discover nothing in these facts which raises what may be called a *legal* presumption in favor of the appellants, if by that term was meant anything more than that such facts, or some of them, have a recognized and declared probative weight, sufficient under some circumstances to establish a *prima facie* case. Concerning such presumptions, so called, there is in the books an infinite variety and contrariety of statement. But it is useless here to enter into a discussion of the matter, for upon the record before us we can see no reason to think the trial court failed to give to each item of evidence its full weight, whether naturally pertaining or arbitrarily attached to it by the law. It was the duty of the court to weigh all the evidence, and we cannot say that it did not do so, and correctly. In other words, if the appellants meant by their claim that facts found were sufficient as a matter of law to establish conclusively, irrefutably, the fact that the testatrix either herself made such erasures, or caused the same to be made in her presence, such claim is not correct, and no authority has been cited or exists anywhere to support such claim. But if it is only meant that such facts shift, satisfy or discharge a burden, casting it upon the other side, not to prove the contrary, but to disprove or overcome that, not to establish a negative, but to overcome an affirmative, we cannot say, nor do we believe, that the court below considered or acted otherwise than with the same view.

It was further claimed by the appellees, as we have seen, that a portion of a will could not be revoked in the manner considered. If this be correct, it in itself furnishes a full justification of the decision of the court below. For the reasons already stated, we do not need to place our decision upon this ground; yet we ought not to pass it by without some reference and consideration. It would perhaps be too strict a construction of the statute referred to, if we held that under no circumstances could there exist a partial revo-

cation of a will or codicil, effected by burning, canceling, tearing or obliteration; that such revocation must extend to the whole instrument and be operative to revoke the whole, or be without effect. Such a construction has indeed been given to very similar statutory provisions in several other jurisdictions. But probably the weight of authority upon the question is otherwise. The entire subject is most exhaustively and ably treated in a note to the case of *Graham* v. *Birch*, 28 Amer. St. Rep. 344. But on the other hand if we were to declare, following the language of the opinion often cited in *Bigelow* v. *Gillott*, 123 Mass. 102, that the authority to revoke an entire will included the lesser power to revoke any portion of it only, and to stop there, as the court in Massachusetts does, it seems to us that an inference might be drawn that would extend entirely too far. For, if such conclusion, looking at the statute in question alone, might be drawn, there is another statute appearing upon the same page of the General Statutes, namely § 538, providing how wills must be executed. If a case arises which is simply and purely one of revocation, § 538 will not apply. But if such revocation involves alteration, it certainly must apply. The difference in meaning between the two terms is aptly stated by MELLISH, L. J., in *Swinton* v. *Bailey*, 45 L. J. Ex. 427, where a testator by his will had devised his real estate to *E*, " her heirs and assigns forever." He subsequently obliterated these words with pen and ink. The judge said (p. 429) : " The difference between revocation and alteration seems to me to be this : if what is done simply takes away what was given before or a part of what was given before, then it is revocation, but if it gives something in addition, or gives something else, then it is more than revocation and cannot be done by mere obliteration." In *Eschbach* v. *Collins*, 61 Md. 478, is an able discussion of this matter. In that case the effect of erasures was to enlarge the estates of the devisees from life estates to fees. The court held such erasures inoperative under a statute which provided that a will, *or any clause thereof*, might be revoked by cancellation. The court said (p. 499) : " The will has

not been revoked; it has been altered. It cannot be sup-
posed that when the legislature uses the word 'revocation,'
it is to be construed to mean 'mutation.' . . . When by the
obliteration of certain words a different meaning is imparted
there is not a mere revocation. There is something more
than the destruction of that which has been antecedently
done. There is a transmutation by which a new clause is
created. There is another and a distinct testamentary dis-
position which must be authenticated by the observance of
the statutory requirements." The court gives as an illus-
tration of how fully such a transmutation might be made by
mere erasures, this example : Suppose the original words
were, " To my son William I give nothing, and give all my
estate to my son John." The will with no addition could
be made to read, " To my son William I give all my estate."
This may seem an extreme illustration, but probably there
are few wills made of any considerable length, in which
alterations in meaning, by mere erasure, could not be ef-
fected, as objectionable, if not as marked as this. Indeed,
without holding that there are none, it seems to us that
there are few cases that could arise where the revocation of
a portion only of a will, would not operate to alter other
portions of it. If an entire clause—meaning by that word
one of those distinct and generally numbered subdivisions
into which wills are frequently aparted, or an entire uncon-
nected provision making disposition of property—be erased
or canceled, and what was thus disposed of becomes intes-
tate, it may be said that there is a revocation, and nothing
more.

The same thing has been affirmed by some courts where,
instead of such intestacy, the property passes into a pre-
scribed residuum. But this appears to us to be more question-
able. The residuary devisee or legatee takes by virtue of
the will, defeating the heir, and he takes by force of the alter-
ation what he did not take without it. The mischief seems
the same. The distinction is more apparent than the differ-
ence. Take the very case before us : There were originally
two clauses. One disposed of certain stock ; the other of the

balance of the estate.    By revoking the first, there ceased to be any residue, unless the estate in its entirety can be so styled.    But look at the object of the change.    Was it revocation, or was it alteration?    One of the brothers of the testatrix procured a copy of the will from another brother who had it in his possession.    He was apparently curious until he knew its contents, and dissatisfied when he learned them. He said to his sister, "By your will you have given my brother Charles' family twenty-four shares of the New York and New Haven Railroad stock, and you have given my brother David and myself eight."    She said "I won't have it so; I will scratch it out."    What was this interested brother's motive?    To defeat his nieces of their legacies? Or was it rather to increase his own?    What would the old lady "not have so"?    That her nieces should be remembered, or that the families of those brothers should be treated unequally?    It seems to us the answer is obvious, and that to all just intents and purposes here was not merely revocation, but substitution; not destruction, but reconstruction; a "scratching out" indeed, but one equivalent to a writing in; the making of a new testamentary disposition, and in a manner not permitted by law—a law passed in the interest of public policy, the wisdom of which such a case as the present abundantly demonstrates.

There is no error.

In this opinion the other judges concurred.