[No. 23053.   Department One.   July 24, 1931.]

*In the Matter of the Estate of* Lois K. Appleton, *Deceased.*[1]

[1]Reported in 2 P. (2d) 71.

*Peters, Powell, Evans & McLaren,* for appellants.

*Thos. M. Askren* and *S. W. Brethorst,* for respondent.

PARKER, J.—This is a will contest. E. B. Palmer, being named as executor and a legatee in a document purporting to be the last will and testament of Lois K. Appleton, deceased, offered the document for probate in the superior court for King county, and petitioned in usual form that it be admitted to probate and established as her last will and testament. William Hicks, Henry Hicks and Ethel Hicks, nephews and niece, claiming to be the only heirs of Mrs. Appleton, filed their objections against the establishing of the document as the last will and testament of Mrs. Appleton; alleging as ground therefor "that the same had been cancelled and revoked by the testatrix." While the contest was pending, the superior court, by consent of all the parties to the contest, entered an order reading, after reciting due execution of the will by Mrs. Appleton, in part as follows:

"Now, THEREFORE, it is hereby ordered that the portion of said document appointing and naming said E. B. Palmer as executor thereof, be and is hereby admitted to probate; that E. B. Palmer named in said will be, and he is hereby appointed executor of said will; . . .

"IT IS FURTHER ORDERED, that this order is not an adjudication as to the validity of any other portions of said will, but that the question of to what extent said will has been revoked or cancelled is expressly reserved for the future consideration of this court."

While our probate code (§§ 1380-1385, Rem. Comp. Stat.) contemplates proof of wills in common form, without notice in the first instance, and the initiation of contest thereafter against wills tentatively so established, the issues presented by the petition of

Palmer for the probate of the will, and the objections thereto by the contestants, proceeded to trial in the superior court; Palmer and the contestants submitting themselves to the jurisdiction of the court for determination of the question of the revocation of the will or any part thereof by cancellation. The trial of the cause resulted in a decree admitting to probate and establishing as the last will and testament of Mrs. Appleton certain portions of the document as her last will and testament, and, in effect, rejecting other portions thereof as having been revoked by her cancellation thereof upon the face of the will as originally executed by her. From this disposition of the contest in the superior court, the contestants have appealed to this court.

The contest was waged in the superior court upon the theory that the revocation of the will, in whole or in part, was effected by Mrs. Appleton's drawing pencil lines through the typewritten words of certain portions of the will, and by making certain interlineations in the will in her own handwriting, after its execution by her. There seems to be no serious contention but that the lines and the interlineations so appearing upon the face of the will were actually made by Mrs. Appleton after its execution. However, we think it is convincingly so shown, by the evidence of her exclusive possession of the will for a period of several months immediately prior to her death, during which period the cancellations and interlineations must have been made, and by the evidence of the interlineations being in her handwriting. The will, as originally drawn and executed, contains, apart from the usual introduction and conclusion of such instruments, seven numbered paragraphs. We quote these paragraphs in full, italicizing the words stricken therefrom by the lines made

by Mrs. Appleton and enclosing in brackets the words interlined by her, as follows:

"FIRST. I direct that my body be cremated under the direction of my executor, as hereinafter named, and my ashes placed in Washelli *Cemetery* [Mausoleum]. *And I desire that my executor purchase one lot or grave in which shall be placed the urn to contain my ashes.* I direct that my executor take the ashes of my husband, now at Bonney-Watson Co., and place the two receptacles together in the *grave* [Mausoleum]. I also direct that my casket be immediately closed before and after the services of the Episcopal Church.

"SECOND. I direct that my representative, when appointed, as hereinafter named, as soon as he shall have funds in his hands sufficient therefor, pay my funeral expenses and the expenses of my last illness and all the just debts and obligations of my estate, if any there be.

"THIRD. *I desire my executor to retain from the first moneys that come into his hands, the sum of Five Hundred Dollars ($500.00) for the purpose of providing permanent care for my dog, which has been my faithful friend and companion for many years; it being my intention that he should be given the very best of care and attention as long as he lives,* and his ashes buried in the plot of ground at Washelli Cemetery.

"FOURTH. I direct that my executor pay to the presiding officer of the First Presbyterian Church of Oak Park, Illinois, the sum of Three Hundred Dollars ($300.00), conditioned that said Church place in it a stained glass window in memory of my son, William St. Clair Fish. *In the event that Frank Barnard of Oak Park, Illinois, is still living, I desire that this duty should be performed under his direction, but in the case of his demise, I desire the executive officer of the Church to do this.*

"FIFTH. *I direct that my friend, Mrs. A. W. Sexsmith, of Renton, Washington, take charge of and dispose of all of the personal effects, except such as are herein disposed of, situated in my home at the time of my death, to be distributed by her as per directions either written or verbally given to her prior to my demise.*

"I desire that my niece, Lucile Hicks, have my wide gold bracelet, a three-stone diamond ring, also four antique teaspoons, two serving spoons, four old silver salt spoons, one antique cream spoon and one antique sugar spoon, with the information that the above are very old and are sterling silver and have been kept in my family for more than one hundred years, and I desire that she hand them down to her descendants. *I give to my niece, Mabel Hicks, my four-stone diamond ear-rings. The rest of the personal effects I desire to be disposed of as directed by Mrs. Sexsmith.* [Have all of my jewelry.]

"SIXTH. All the remainder of my estate, real, personal and mixed, wheresoever situated and howsoever held, after the same shall have been reduced to cash, I do give, devise and bequeath as follows: To Frank Anderson, now twelve years of age, son of Nettie Morrison Anderson, and Louie Anderson of Glencoe, Minnesota, *one-half* (½) [all] thereof for the purpose of giving him a college education, and this shall be paid to him by my executor, to be spent as he sees fit, in monthly instalments of Fifty Dollars ($50.00) each, beginning when he shall have reached the age of sixteen (16) years, and continuing thereafter until this bequest is exhausted; *to the King County Humane Society, a corporation of Washington, one-fourth* (¼) *thereof, and to my friend and legal advisor, E. B. Palmer, one-fourth* (¼) *thereof.*

"SEVENTH. I hereby nominate and appoint my friend, E. B. Palmer, of Seattle, Washington, the executor of this my LAST WILL AND TESTAMENT, to administer upon the same according to the terms hereof, after the same shall have been admitted to probate as required by the statute laws of the State of Washington, and I hereby direct that my intention as herein expressed be carried out and my estate managed, settled, and distributed according to the terms hereof without the intervention or supervision of any court or tribunal whatsoever, and with full power of my executor to pass upon, allow or reject claims, take possession of my estate, sell for cash or upon any such terms as he may determine, either real or personal property

regardless of whether the sale is necessary to pay the debts of my estate or the expenses of administration, and no bond shall be required of my executor to qualify hereunder or to sell real or personal property."

The decree established as a part of the will all of the unitalicized above quoted portion of the first paragraph, using the word "mausoleum" for "cemetery" and the word "mausoleum" for "grave". The decree also established as a part of the will the whole of the above quoted unchanged second paragraph thereof. The decree also did not establish as a part of the will any portion of the third above quoted paragraph thereof. The court evidently regarded the last uncancelled few words thereof as being meaningless, in view of the cancellation of the entire preceding portion of the paragraph. We note that the evidence shows that the dog died before Mrs. Appleton died. The decree also established as a part of the will the unitalicized portion of the above quoted fourth paragraph thereof. The decree also established as a part of the will the unitalicized portion of the above quoted fifth paragraph thereof; the court evidently viewing the inserted words "Have all my jewelry" as being meaningless. The decree also established the whole of the above quoted sixth paragraph of the will, including the italicized attempted cancelled portion thereof and excluding the interlined word "all"; thus establishing that paragraph as originally written in the will; this manifestly upon the theory that the doctrine of dependent relative revocation became controlling of the attempted revocation of any part of that paragraph, since the insertion of the word "all" by Mrs. Appleton in that paragraph plainly showed an attempt on her part to, in effect, make a new will as to her gift to Frank Anderson. The decree also established as a

part of the will the whole of the above quoted unchanged seventh paragraph thereof.

In our probate code, Rem. Comp. Stat., § 1398, we read:

"No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked except by a subsequent will in writing, or by burning, canceling, tearing, or obliterating the same, by the testator or testatrix, or in his or her presence, by his or her consent or direction."

It seems well settled law, both in this country and in England, that statutes of this nature authorize revocation of a portion of a will by cancellation of a portion upon the face of the will by the testator with intent to revoke such portion, leaving the remainder of the will unaffected, if such remainder, standing alone, be an understandable testamentary expression of the testator. The rule is stated in the text of 1 Page on Wills, p. 658, § 417, as follows:

"The Statute of Frauds provided, in negative terms, that 'no devise . . . nor any clause thereof' should be revoked, except by a subsequent will and the like, or by one of the specified acts, manifest upon the face of the will. The Wills Act of Victoria used the words 'no will or codicil or any part thereof.' Similar provisions are found in many American statutes. Where such provisions are in force, a will may be revoked partially by canceling one or more clauses, or by burning and the like with intention to revoke such clause or clauses but not to revoke the whole will; provided that, if the will is one which must be attested and subscribed by witnesses, such cancelation, burning, and the like, if given full effect, will operate only as a revocation of such clauses and not as a new devise."

See, also, 40 Cyc. 1186.

This controversy is principally over the sixth paragraph of the will and its attempted change by Mrs. Appleton by her cancelling words and figures

thereof, which, as originally written in her will, gave to the King County Humane Society and to Palmer each a one-fourth of the remainder of her estate, and in the same paragraph cancelling the words and figures "one-half ½," giving to Frank Anderson that proportion of the remainder of her estate, and interlining in lieu of all of those cancellations the word "all"; thus plainly attempting to make a new and enlarged bequest to Frank Anderson in connection with her attempted cancellation of the bequests to the humane society and Palmer, and this without executing a new will or codicil to that end, in writing, and signed in the presence of witnesses, as required by the provisions of Rem. Comp. Stat., §§ 1395, 1414. Manifestly, she could not effectually make such an enlarged bequest by merely changing upon the face of the will the words and figures "one-half ½" to "all". It is plain that Mrs. Appleton attempted cancellation of her bequests to the humane society and to Palmer, to the sole end that those bequests be transferred to Frank Anderson, and so make him the sole beneficiary of the remainder of her property. Thus, it seems to us that the answer to the question of whether or not the sixth paragraph of the will was effectually revoked by Mrs. Appleton must be made in the negative, by application of the legal doctrine of "dependent relative revocation," which we conceive to mean, as applicable to that paragraph, simply that Mrs. Appleton intended cancellation of her bequests to the humane society and Palmer to be dependent upon her attempted enlarged bequest to Frank Anderson being effective. In *Wolf v. Bollinger*, 62 Ill. 368, Justice Sheldon, speaking for the court, said:

"It is believed to be the doctrine, as laid down in Redfield on Wills, 314, 325, 327, and well settled by the authorities, that where the testator makes an al-

teration in his will, by erasure and interlineation, or in any other mode, without authenticating such alteration by a new attestation in the presence of witnesses, or other form required by the statute, it is presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute; and such alteration not being so made as to take effect, the will, therefore, stands in legal force, the same as it did before, so far as it is legible after the attempted alteration. *Short v. Smith,* 4 East. 417; *Jackson v. Holloway,* 7 J. R. 394; *Laughton v. Atkins,* 1 Pick. 535."

In *Gardner v. Gardner,* 65 N. H. 230, 19 Atl. 651, 8 L. R. A. 383, discussing the rule and its application to a situation similar to that before us, Justice Blodgett, speaking for the court, said:

"The first question for adjudication presented by this case arises from the attempt of the testatrix to increase a smaller devise to a larger one by substituting 'twelfth' for 'fourteenth', by interlineation and erasure. While in one sense this was a revocation by the testatrix of what she had previously done, in the true sense it was an alteration. To revoke a testamentary disposition is to annul it, so that in legal contemplation, it ceases to exist and becomes as inoperative as if it had never been written. But when by the substitution of certain words for others a different meaning is imparted, there is not a mere revocation. There is something more than the destruction of that which has been antecedently done. There is a transmutation, by which a new clause is created. There is another and a different testamentary disposition, which, to have validity, must be authenticated by the observance of the statutory requirements. *Eschbach v. Collins,* 61 Md. 478.

"It follows that the failure of the testatrix to execute her purpose in the manner prescribed by the statute (section 6) prevented it from going into effect as a testamentary disposition; and as it is apparent that she had no intent to revoke except by way of alteration, and the word erased not having been so

obliterated as to be illegible, there was no revocation, and the will remained intact as before. *Jackson v. Holloway,* 7 Johns. 394; *McPherson v. Clark,* 3 Bradf. 92; *Quinn v. Quinn,* 1 Th. & C. 437; *Wolf v. Bollinger,* 62 Ill. 368; *Wright v. Wright,* 5 Ind. 389; *Penniman's Appeal,* 20 Minn. 245; *Stover v. Kendall,* 1 Cold. 557; *Bethell v. Moore,* 2 Dev. & Bat. 316; *Wheeler v. Bent,* 7 Pick. 61; *Short v. Smith,* 4 East. 418; *Kirke v. Kirke,* 4 Rus. 435; *Martins v. Gardiner,* 8 Sim. 73; *Locke v. James,* 11 M. & W. 901; 2 Am. Lead. Cas. (5th Ed.) 501; Redf. Wills, 325, 326; *Eschbach v. Collins, supra; Pringle v. McPherson,* 2 Brev. 279. In other words, the effect of the alteration is the same as it would have been had it been made by a codicil imperfectly executed.''

These quotations are in harmony with numerous later authorities. 28 R. C. L. 182; 1 Page on Wills, (2d ed.), p. 721, §§ 449-450; 40 Cyc. 1196. See notes in 38 L. R. A. (N. S.) 802, 803, and in 62 A. L. R. 1401.

We conclude, as the trial court did, that the attempted cancellation and interlineation made by Mrs. Appleton upon the face of paragraph VI of her will did not work any change in the legal effect of that paragraph as originally written therein.

Contention is made in behalf of the contestants, as we understand their counsel, that the testimony of witnesses given upon the trial of statements made by Mrs. Appleton, apparently near and subsequent to her making the cancellations and the interlineation of the word ''all'' upon the face of the sixth paragraph of her will, lends such support to her intent to revoke the bequests to the humane society and to Palmer as to call for a holding that she did at least effectually revoke those bequests, though her attempted increase of her bequest to Frank Anderson was not effective. Conceding, for the sake of argument, that

such testimony was admissible as bearing upon the question of her intent, we find, by a careful reading of that testimony, that it is rendered plain that it does not appear thereby that there was any intent on her part other than possibly to change her will so as to leave a large part, or possibly all, of her property to her nephew, William Hicks, one of these contestants. We do not find in that testimony any intent on her part, either expressed or implied, to die intestate. Whatever intent she had as to the making of a bequest to her nephew William Hicks was never evidenced by the making of any new will or codicil, as the law requires.

It is finally contended in behalf of the contestants

". . . that the final appearance and condition in which the decedent left her will is such as to negative the idea that it was her intent to retain any portion of it as constituting her last will and testament. It is not to be presumed that the decedent still retained her original residuary scheme of distribution as disclosed in Paragraph VI except as it constituted a part of her original will with its various specific bequests."

The first paragraph of the will does not, either as originally written or as appearing with the cancellations and the interlined words, make any bequest or any disposition of Mrs. Appleton's property which, in the light of this record, can be said to substantially increase or diminish the bequests made by her in the sixth paragraph of her will.

The third paragraph of the will was, as we have already noticed, entirely revoked by Mrs. Appleton's cancelling practically all of the words thereof to the extent of leaving the remaining words meaningless. It seems evident that it was her original intent that whatever remained of the five hundred dollars set aside

for the care of her dog, should ultimately go to Frank Anderson, the humane society and Palmer as residuary legatees under the sixth paragraph of the will. She manifestly did not make this bequest with a view that it be necessarily consumed in the care of her dog. Indeed, it eventuated that none of this fund could be so consumed in that way, because the dog died before she died. That, it is fair to assume, was the cause of her revoking this paragraph of her will. We are of the opinion that the revoking of this provision of the will did not work a vital change in the residuary bequests made in the sixth paragraph of the will.

The fourth paragraph of the will remains wholly unchanged so far as the amount of the three hundred dollar bequest therein made is concerned. The cancellation of a part thereof only cancelled specific directions as to who personally should direct the placing of the window in the church, manifestly leaving that duty to the church organization. The bequests in the sixth paragraph of the will are clearly unaffected by this cancellation.

By the fifth paragraph of the will, as originally written, Mrs. Appleton made the gift of her diamond earrings to Mabel Hicks, referred to as her niece, but who, the evidence shows, was her grandniece. This gift, as we have seen, was revoked by cancellation. This comes the nearest to the revoking of any unconditional bequest made by Mrs. Appleton having the result of enhancing the residuary bequests made by her in the sixth paragraph of the will to Frank Anderson, the humane society and Palmer. We have nothing in this record indicating the value of the earrings. They were evidently a part of Mrs. Appleton's mere personal effects. It seems probable that she desired her executor to receive them in trust to be disposed of by him in the place of Mrs. Sexsmith, though, of course, she did not

effectually create such an enforcible trust. Under all the circumstances, we cannot conclude that Mrs. Appleton's cancelling of this bequest so vitally enhanced the residuary bequests to Anderson, the humane society and Palmer as to impair those bequests, or any other portion of the will as established by the superior court.

Counsel for the contestants call our attention to and rely principally upon the decision of the District of Columbia court of appeals in *Henry v. Fraser,* 58 App. D. C. 260, 29 Fed. (2nd) 633, 62 A. L. R. 1364. There is language in that opinion which may seem to lend some support to the contention that the will should be deemed wholly revoked. But we think that decision, when carefully read as a whole, hardly sustains this contention. That case presented the question of whether or not the will was entirely revoked by the testator's removing from his will, after its execution, one entire sheet thereof, it being written upon two sheets, and substituting another sheet for the removed one, there being nothing shown as to what was upon the removed sheet, other than, in a general way, that there were many bequests thereon. It was held, under the attending circumstances, that that act of the testator had the effect of revoking the entire will, including the residuary clause appearing upon the second sheet which had not been removed. It appeared that there was no attempt to re-execute the will in the manner required by law, after the new sheet had been added to it. We think that decision is not controlling of this inquiry.

We conclude that the decree of the superior court establishing the portions of the will therein quoted as the last will and testament of Mrs. Appleton must be affirmed. It is so ordered.

HOLCOMB, MITCHELL, and MAIN, JJ., concur.

TOLMAN, C. J. (dissenting in part)—The sixth paragraph of the will should be held to have been revoked by the testatrix, but as to the remainder, I concur.