949 P.2d 804 (1998)
134 Wash.2d 316
In the Matter of the ESTATE OF Claire A. MALLOY.
Mary S. MALLOY, Appellant,
v.
Herbert G. SMITH, Respondent.
No. 64873-5.
Supreme Court of Washington, En Banc.
Argued September 23, 1997.
Decided January 22, 1998.
*805 Rodney T. Harmon, Bothell, for petitioner Malloy.
Whitmore-Phelps-Larsen Law Firm, P.S., by David J. Whitmore, Wenatchee, for respondent Smith.
Jeffers, Danielson, Sonn & Aylward, Gregory A. Lair, Wenatchee, for St. Joseph Catholic Church.
GUY, Justice.
In this appeal we are asked to determine whether a testator's penciled-in cancellation of a trust provision and of a specific bequest is effective as a "partial revocation" of her will or is an alteration or modification of the will and, therefore, subject to the formalities required for the execution of wills. We hold that an attempted revocation which significantly alters the design or result of a will creates a new will which must be executed and attested to according to the requirements of RCW 11.12.020.
The testator's attempted revocation in this case resulted in a significant change in the character and value of the bequest to her daughter, Appellant Mary S. Malloy, and resulted in a new will. Because the formalities for the execution of wills were not observed, the alterations of the will are invalid. The decision of the Court of Appeals is affirmed.

FACTS
On April 13, 1992, Claire A. Malloy executed her will. Article IV of the will makes provisions for the disposition of Claire Malloy's estate. In paragraph "A" of that article, the will provides for specific bequests based on percentages of existing cash, cash from the sale of Claire Malloy's home, and other liquid assets. Thirty percent of these assets were to go, in trust, to Claire Malloy's only child, Mary S. Malloy. In paragraph "B" of Article IV, Claire Malloy bequeaths to Mary a real estate contract and the residue of her estate. Article V of the will describes the nature and duties of the trust which was to receive the 30 percent specific bequest made to Mary in Article IV(A).
In April 1993, Claire changed her will. The changes were made in pencil by striking out certain words and were not formally executed and attested. The pertinent changes Claire made to Articles IV and V are the following:

ARTICLE IV DISPOSITION OF ESTATE
A. Specific Bequests. If at the time of my death, my estate includes my house at 1204 Orchard, Wenatchee, Washington, it is my desire that my Personal Representative liquidate that property for cash. The net sum so realized together with available cash in my bank accounts, savings accounts, certificates of deposit, stocks, bonds and investment accounts, wherever held (but not the Sasseen Contract), I give, devise and bequeath as follows:
1. TWENTY PERCENT (20%) of the above sum shall be distributed equally to those of the following identified persons who shall survive me: [The will names six individuals.]
2. TEN PERCENT (10%) to ST. JOSEPH'S CATHOLIC CHURCH, Wenatchee, Washington;
3. TEN PERCENT (10%) to SISTERS OF HOLY NAMES, Spokane, Washington;
4. TEN PERCENT (10%) to SISTERS OF ST. FRANCIS ...;
5. TWENTY PERCENT (20%) to my granddaughter, MICHELLE SUSAN MARCOE [in trust] ...;
6. THIRTY PERCENT (30%) to my daughter MARY SUSAN MALLOY, provided however, that said sum shall be distributed to HERBERT G. SMITH, as Trustee for MARY SUSAN MALLOY. During the term of the Trust, the Trustee shall distribute to MARY SUSAN *806 MALLOY the sum of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) each month from interest and/or principal. The Trust shall terminate and the principal and any accumulated income distributed to MARY SUSAN MALLOY when the Contract I have with LINDA SASSEEN for the property at 228-234 South Mission Street, Wenatchee, Washington is satisfied....
....
B. I give devise and bequeath to my daughter, MARY SUSAN MALLOY all of my interest in the Real Estate Contract with LINDA SASSEEN for the property at 228-234 South Mission Street, Wenatchee, Washington and the rest, residue and remainder of my estate.
ARTICLE V TRUSTEE
....
C. The account for my daughter MARY SUSAN MALLOY shall be of such a nature that a distribution of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) per month of income and/or principal can be made to her during the duration of the Trust.
Clerk's Papers at 61-63.
For purposes of resolving the issue before the Court, the parties and the trial court presumed that Claire Malloy intended to make and did, personally, make the revisions to her will.
On June 19, 1993, Claire Malloy died. The estimated value of her estate is in excess of $300,000. The assessed value of the residence at 1204 Orchard in Wenatchee is $67,915.
An order was entered admitting the will to probate, subject to later interpretation of the effect of the strike-outs, and confirming the personal representative. The personal representative then moved for an order declaring the strike-outs on the face of the will to be ineffective. The trial court bifurcated the issue of the legal effect of the strike-outs from the factual issue of whether the strike-outs were made by Claire Malloy and, if so, were intended to revoke the specific bequest of the house and to terminate the trust provision.
The trial court then ruled that the strike-outs made on Claire Malloy's will were changes or alterations of such a scope and to such an extent that, if given effect, they would substantially alter the dispository scheme of the will and thus were subject to the formal requirements for making a will. Because the formal requirements were not observed, the trial court ruled the partial revocation was invalid.
The Court of Appeals affirmed, holding that "[b]y deleting the residence from the specific bequests, [Claire Malloy] so vitally enhanced Mary's gift under the residuary clause as to constitute a new scheme requiring the observation of the formalities for execution of a will." In re Estate of Malloy, 84 Wash.App. 69, 74, 925 P.2d 224 (1996), review granted, 131 Wash.2d 1015, 936 P.2d 417 (1997). The Court of Appeals further held that the trial court properly considered the size of the resulting specific and residuary bequests in determining the effect of the attempted partial revocation. Malloy, 84 Wash.App. at 74, 925 P.2d 224. This Court granted Mary Malloy's petition for review.

ISSUE
Was the testator's cancellation of the trust provision and of the specific bequest of her residence effective as a "partial revocation," or was it an alteration or modification of the will which was subject to the formalities required for execution of wills?
DISCUSSION
A basic principle underlying any discussion of the law of wills is that an individual has the right and the freedom to dispose of his or her property, upon death, according to the dictates of his or her own desires. In re Estate of Hastings, 88 Wash.2d 788, 796, 567 P.2d 200 (1977) (testamentary freedom is thought of not only as a natural almost political right, but as a natural condition of law as well); In re Estate of Meagher, 60 Wash.2d 691, 692, 375 P.2d 148 (1962) (the right to dispose of one's property by will is not only a *807 valuable right but is one assured by law and protected by statute); Peter C. Spratt, Will Drafting, in 1 Kelly Kunsch et al., WASHINGTON PRACTICE: METHODS OF PRACTICE, ch. 28, at 617 (4th ed. 1997) ("One of the blessings of the Magna Carta and the importation of its principles to the United States is the right to direct who will inherit one's property upon death."); Melanie B. Leslie, The Myth of Testamentary Freedom, 38 ARIZ. L. REV. 235 (1996) (courts and scholars often treat testamentary freedom as if it were a fundamental tenet of our liberal legal tradition).
This right of testamentary freedom is a statutory right, In re Estate of Phillips, 193 Wash. 194, 202, 74 P.2d 1015 (1938), and the power to regulate the form and validity of wills belongs with the Legislature. See 2 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS § 19.4, at 63-64 (1960) (hereafter PAGE ON WILLS).
This state's Legislature has determined that the right of testamentary freedom includes the right to make a will, the right to change a will, and the right to revoke a will. See RCW 11.12.010, RCW 11.02.005(9), RCW 11.12.040. It also has determined that in order to be valid, a will must be in writing, formally executed and attested to by two witnesses. RCW 11.12.020.[1] Alterations and changes to a will may be made by executing a codicil, which also must comply with the formality requirements set forth in RCW 11.12.020. See RCW 11.02.005(9).[2]
The purposes of the statutory requirements regulating the execution of wills are to ensure that the testator has a definite and complete intention to dispose of his or her property and to prevent, as far as possible, fraud, perjury, mistake and the chance of one instrument being substituted for another. PAGE ON WILLS § 19.4, at 66.
Revocation of a willas distinguished from making a new willis permitted without the formalities required for executing a will. RCW 11.12.040. At the time Claire Malloy made the changes to her will and at the time of her death, the revocation statute provided, in pertinent part:
A will, or any part thereof, can be revoked
(1) By a written will; or
(2) By being burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence and by his direction.
RCW 11.12.040 (emphasis added).[3]
This statute permits a testator to revoke a part or parts of a will, leaving the *808 unrevoked portions of the will in effect, even though the changes to the will were accomplished without observing the statutory requirements for executing wills and codicils. See generally MARK REUTLINGER & WILLIAM C. OLTMAN, WASHINGTON LAW OF WILLS AND INTESTATE SUCCESSION 121-23 (1985). However, in order to be valid, these changes must operate only as revocations, not as alterations of the will. Any modification or alteration of the will will be considered a new devise and invalid because it was not executed pursuant to the statutory requirements. See RCW 11.12.020; PAGE ON WILLS § 21.19, at 375; REUTLINGER & OLTMAN, supra, at 121.
The difference between a revocation and an alteration is not always clear. REUTLINGER & OLTMAN, supra, at 121-22. This is particularly so where, as in the present case, the revocation of one bequest substantially increases or enhances another. See Appeal of Miles, 68 Conn. 237, 36 A. 39, 41 (1896) ("[W]ithout holding that there are none, it seems to us that there are few cases that could arise where the revocation of a portion only of a will would not operate to alter other portions of it."); REUTLINGER & OLTMAN, supra, at 121-22; 79 AM. JUR. 2D Wills § 558 (1975) (there are many situations in which the mere elimination of one part of a will has the effect of altering the original testamentary dispositions, even though no new dispositive words or figures are used).
Our analysis of the issue in this case is guided by three Washington appellate decisions which have considered the validity of attempted partial revocations under RCW 11.12.040: In re Estate of Appleton, 163 Wash. 632, 2 P.2d 71 (1931); In re Estate of Becklund, 7 Wash.App. 10, 497 P.2d 1327 (1972); and In re Estate of Eastman, 61 Wash.App. 907, 812 P.2d 521 (1991).
In the first case, Estate of Appleton, this Court considered the effect of a number of changes a testator had penciled in on the face of her will. The pertinent provisions of the will were the following:
I desire that my niece, Lucile Hicks, have my wide gold bracelet, a three-stone diamond ring, also four antique teaspoons, two serving spoons ... with the information that the above are very old and are sterling silver and have been kept in my family for more than one hundred years, and I desire that she hand them down to her descendants. I give to my niece, Mabel Hicks, my four-stone diamond earrings. The rest of the personal effects I desire to be disposed of as directed by Mrs. Sexsmith. [Have all of my jewelry.]
SIXTH. All the remainder of my estate... I do give, devise and bequeath as follows: To Frank Anderson, now twelve years of age, ... one-half (½) [all] thereof for the purpose of giving him a college education ...; to the King County Humane Society, a corporation of Washington, one-fourth (¼) thereof, and to my friend and legal advisor, E.B. Palmer, one fourth (¼) thereof.
163 Wash. at 636, 2 P.2d 71 (published opinion used italics in place of strikethrough).
We held that the changes in the sixth paragraph, containing the residuary bequests, were invalid because they constituted more than a revocation. In making those changes, the testator was "plainly attempting to make a new and enlarged bequest" without executing a new will or codicil to that end. Appleton, 163 Wash. at 639, 2 P.2d 71. However, we held the revocation of the gift of the diamond earrings was a true revocation and valid because the canceling of that bequest did not so "vitally enhance" the residuary bequests as to impair those bequests or any other portion of the will. Appleton, 163 Wash. at 644, 2 P.2d 71.
In In re Estate of Becklund, one page of the original will was missing when the will was presented for probate. After determining that the page was most likely accidentally omitted, the Court of Appeals went on to discuss the validity of the testator's act if the removal of the page had been purposeful and intended as a partial revocation. The Court of Appeals held:
The partial revocation may not result in a change, alteration or modification of the original will; but the act is restricted to the abolishment, abrogation, annulment, *809 recall, repudiation or retraction of a part of the original will.
Becklund, 7 Wash.App. at 19, 497 P.2d 1327.
The court in Becklund interpreted Appleton as requiring the rejection of the attempted partial revocation "because the effect of it would have been to make a new and enlarged bequest without executing a new will in writing." Becklund, 7 Wash.App. at 16, 497 P.2d 1327. However, the Court of Appeals stated that, in general,
[i]f the result of the partial revocation only causes an increase in the residuary estate rather than such a vital enhancement thereof as to constitute a new scheme, this is not a disparate testamentary disposition but only a consequence resulting from the exercise of the power given the testator by the statute. However, the remaining portion of the will must be an understandable testamentary disposition.
Becklund, 7 Wash.App. at 17, 497 P.2d 1327 (citations omitted).
In the third case, Eastman, the testator left everything to his wife; but if she should predecease him, then everything would go to his sons, Michael and Edward, "in equal shares, share and share alike." The testator attempted a partial revocation by striking out the words "Edward M. Eastman in equal shares, share and share alike," thus leaving the entire estate to his son, Michael. The Court of Appeals held that the partial revocation was invalid because it was intended to disinherit Edward and increase the bequest to Michael. Eastman held that a partial revocation is valid only if the revocation does not alter the dispository scheme; however, "an increase in a residuary estate which does not constitute a new dispository scheme is a permissible result of a partial revocation." Eastman, 61 Wash.App. at 910, 812 P.2d 521.
These three cases interpret Washington's statute to permit an informal revocation, but not an alteration or modification, of any part of a will. In determining whether the testator's act was a revocation or an alteration, the Court looks (1) to the intended consequence of the revocation and (2) to the actual effect of that consequence on the dispositional scheme of the original will. Appleton, 163 Wash. at 639, 644, 2 P.2d 71; Becklund, 7 Wash.App. at 17, 497 P.2d 1327; Eastman, 61 Wash.App. at 910, 812 P.2d 521.
If the intent of the revocation is to significantly alter the scheme of the testamentary disposition and if the effect of the revocation is to substantially change the nature or value of a bequest, then an alteration and not a mere revocation has occurred. See Appleton, 163 Wash. at 639, 2 P.2d 71; Becklund, 7 Wash.App. at 17, 497 P.2d 1327; Eastman, 61 Wash.App. at 910, 812 P.2d 521.
An increase in the residuary estate that results as an incidental consequence of the revocation would not invalidate the revocation, as it is merely a consequence of the testator's exercise of a statutory power. See Becklund, 7 Wash.App. at 17, 497 P.2d 1327; Brown v. Brown, 91 S.C. 101, 74 S.E. 135, 136 (1912). However, such an increase is not incidental if the sole purpose or object of the change is to increase the bequest to the residuary beneficiary. Appleton, 163 Wash. at 639, 2 P.2d 71; Eastman, 61 Wash. App. at 910, 812 P.2d 521; Miles, 36 A. at 41.
If the increase is an incidental consequence, rather than the purpose of the revocation, then the Court also looks to the effect of that increase. Where the increase results in a new and enlarged bequest, a "vital enhancement" to the residuary bequest, or a change in the testamentary scheme, the revocation will be declared invalid because it constitutes an alteration of the will, not a revocation. Appleton, 163 Wash. at 639, 2 P.2d 71; Becklund, 7 Wash.App. at 17, 497 P.2d 1327.
We recognize that the articulation of an approach which requires these two factors (underlying intent and effect of the change) to be applied in determining the validity of partial revocations does not produce a bright line rule. Instead, the approach is one which requires an analysis of an attempted partial revocation and its impact on the testamentary scheme on a case-by-case basis. We believe the nature and variety of circumstances involved in such cases requires an approach that considers the documents and facts of each case. See REUTLINGER & OLTMAN, supra, at 122; Patrick v. Patrick, 102 Md.App. *810 438, 649 A.2d 1204, 1211 (1994) (the case-by-case approach taken by the Washington courts deemed to be the most appropriate).
Applying these factors to the case before us, it appears that Claire Malloy's sole purpose in canceling the specific bequest and the trust provision was to increase the amount and the form of Mary Malloy's share of the estate. The attempted partial revocation changed the nature or character of the bequest from one in trust to a direct monetary gift. It also changed the specific bequests by removing the direction to sell the house and by giving it outright to Mary, substantially increasing her bequest and substantially decreasing the specific bequests. This was not an incidental consequence of the attempted revocation but the purpose of it. Regardless of the value of the house (and this is not clear from the record), this was a change that altered a provision of the will; it did not simply revoke a specific bequest. Additionally, because of the value of the house, in proportion to the value of the entire estate, the revocation of the specific bequest so significantly enhanced the bequest to Mary Malloy that a modification of the will occurred.

CONCLUSION
The strike-outs resulted not in a revocation but in an alteration of Claire Malloy's will. Because they were accomplished without the formalities required for the proper execution of wills, the strike-outs are invalid and ineffective. The will should, therefore, be probated as written and executed in April 1992.
Affirmed.
DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] RCW 11.12.020 provides:

"(1) Every will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request: PROVIDED, That a last will and testament, executed in the mode prescribed by the law of the place where executed or of the testator's domicile, either at the time of the will's execution or at the time of the testator's death, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state.
"(2) This section shall be applied to all wills, whenever executed, including those subject to pending probate proceedings."
[2] RCW 11.02.005(9) was amended in 1994. Laws of 1994, ch. 221, § 1. The former law provided: "`Codicil' means an instrument that is validly executed in the manner provided by this title for a will and that refers to an existing will for the purpose of altering or changing the same, and which need not be attached thereto." The current law provides: "`Codicil' means a will that modifies or partially revokes an existing earlier will. A codicil need not refer to or be attached to the earlier will." A will is "an instrument validly executed as required by RCW 11.12.020." RCW 11.02.005(8). The recent changes to this statute are not pertinent to this appeal.
[3] This statute also was amended in 1994. Laws of 1994, ch. 221, § 12. The amended statute provides in pertinent part:

"(1) A will, or any part thereof, can be revoked:
"(a) By a subsequent will that revokes, or partially revokes, the prior will expressly or by inconsistency; or
"(b) By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator or by another person in the presence and by the direction of the testator."
The statutory language pertaining to the issue in this appeal has not changed.